The Honorable Ken Milburn, Chair Tobacco Control Board 101 E. Capitol Avenue, Suite 110 Little Rock, AR 72203-3490
Dear Mr. Milburn:
You have requested an Attorney General opinion concerning the Unfair Cigarette Sales Act, which prohibits the sale of tobacco products below a certain price.
You indicate that manufacturers have developed programs to assist certain retailers in sales. Originally, the manufacturers provided paper coupons that were placed on the cigarettes and were then redeemed at the register by the consumer. Under a more recently developed program, the manufacturer pays directly to the retailer a sum of money (known in the industry as a "buydown" or a "paperless coupon"). No actual coupons are used, but the retailer lowers the price actually charged to the consumer.
With regard to these programs, you have presented the following questions:
 (1) Is it a violation of the Unfair Cigarette Sales Act for a retailer to sell tobacco products to a consumer, where the consumer pays, out of his own pocket, less than the minimum price, due to the use of a paper coupon?
 (2) Is it a violation of the Unfair Cigarette Sales Act for a retailer to sell tobacco products to a consumer, where the consumer pays, out of his own pocket, less than the minimum price, due to the use of a "buydown" or "paperless coupon"?
Your request is a follow-up to Opinion No. 98-266, in which you presented questions that were identical to those presented here. In that request, however, unlike in this request, you did not provide any factual assumptions. As a result, I was unable to opine definitively because of the many factual variables that could have impacted on a definitive answer. You have now provided certain factual assumptions.
More specifically, you have asked that I assume the following facts, for purposes of these questions:
 • The sales price paid by the consumer is less than the "cost to the retailer" as established by the Act;
 • The "intent to injure competitors or destroy or substantially lessen competition" is established; and
• None of the exceptions in A.C.A. § 4-75-703 apply.
With regard to both of the scenarios presented in your questions, you are particularly concerned with the question of whether the sale price in these cases is actually constituted by the amount paid by the consumer plus the amount of the coupon or of the "buydown," and whether that price is therefore (at least conceivably) not less than the "cost to the retailer" (and thus not prohibited by the Act).
RESPONSE
Question 1 — Is it a violation of the Unfair Cigarette Sales Act for aretailer to sell tobacco products to a consumer, where the consumerpays, out of his own pocket, less than the minimum price, due to the useof a paper coupon?
It is my opinion, given the factual and legal assumptions listed above, that it is a violation of the Unfair Cigarette Sales Act for a retailer to sell tobacco products to a consumer, where the consumer pays, out of his own pocket, less than the minimum price, due to the use of a paper coupon.
The primary prohibitions of the Unfair Cigarette Sales Act (which is codified at A.C.A. § 4-75-701 et seq.) are stated as follows:
 (a) It shall be unlawful for any wholesaler or retailer, with intent to injure competitors or destroy or substantially lessen competition, to advertise, offer to sell, or sell, at retail or wholesale, cigarettes at less than cost to the wholesaler or retailer, as the case may be.
 (b) It shall be unlawful for any wholesaler or retailer, with intent to injure competitors or destroy or substantially lessen competition, to offer a rebate in price, to give a rebate in price, to offer a concession of any kind, or to give a concession of any kind or nature whatsoever in connection with the sale of cigarettes.
 (c)(1) It shall be unlawful for any retail dealer to induce or attempt to induce or to procure or attempt to procure the purchase of cigarettes at a price less than cost to wholesaler.
 (2) It shall be unlawful for any retail dealer to induce or attempt to induce or to procure or attempt to procure any rebate or concession of any kind or nature whatsoever in connection with the purchase of cigarettes.
A.C.A. § 4-75-708.
The Act says the following about the use of coupons in a sales transaction:
 In all advertisements, offers for sale, or sales involving two (2) or more items, at least one (1) of which items is cigarettes, at a combined price, and in all advertisements, offers for sale, or sales involving the giving of any gift or concession of any kind, whether coupons or otherwise, the wholesaler's or retailer's combined selling price shall not be below the cost to the wholesaler or the cost to the retailer, respectively, of the total of all articles, products, commodities, gifts, and concessions included in the transactions. . . .
A.C.A. § 4-75-709.
The term "cost to the retailer" is defined in the Act to mean "the basic cost of the cigarettes involved to the retailer plus the cost of doing business by the retailer as evidenced by the standards and methods of accounting regularly employed by him and must include, without limitation, labor including salaries of executives and officers, rent, depreciation, selling costs, maintenance of equipment, delivery costs, all types of licenses, taxes, insurance, and advertising." A.C.A. §4-75-702(12)(A). The Act goes on to state: "In the absence of proof of a lesser or higher cost of doing business by the retailer making the sale, the cost of doing business by the retailer shall be presumed to be six percent (6%) of the basic cost of cigarettes to the retailer." A.C.A. §4-75-702(12)(B).
Various exemptions to the above-outlined prohibitions are set forth in A.C.A. § 4-75-703.[1]
I reject the argument that the sale price in this scenario actually consists of the amount paid by the consumer plus the amount of the coupon (which combined, would not be "less than the cost to the retailer"). I note that if the term "combined selling price," as used in A.C.A. §4-75-709, were defined, that definition would be central to interpreting this issue. However, that term is not defined. The interpretation must therefore be based on other sources of interpretation.
The basis for my rejection of this argument is the fact that under the Act, the sale price that must be evaluated for compliance with the Act is the price that is given in exchange for cigarettes. See A.C.A. §4-75-708; A.C.A. § 4-75-702(7) (defining "sale" as "any transfer for a consideration, exchange, barter, gift, offer for sale, advertising for sale, soliciting an order for cigarettes and distribution in any manner or by any means whatsoever. . . ."). The consideration that is exchanged in a given "sale" under the Act must be exchanged for cigarettes. For this reason, the amount of a coupon cannot constitute part of a "sale" price. The amount of the coupon is paid by the manufacturer, and is not given in exchange for the cigarettes. It is consideration given in a separate transaction between the manufacturer and the retailer. It therefore cannot be calculated as part of the price exchanged for cigarettes.[2]
Finally, it should be noted that in a situation where an intent to injure competitors or to destroy or substantially lessen competition is present, the offering of a concession of any kind in connection with a sale of cigarettes is unlawful, without regard to the sale price or cost to the wholesaler or retailer. This conclusion is based upon A.C.A. §4-75-708(b), which states:
 (b) It shall be unlawful for any wholesaler or retailer, with intent to injure competitors or destroy or substantially lessen competition, to offer a rebate in price, to give a rebate in price, to offer a concession of any kind, or to give a concession of any kind or nature whatsoever in connection with the sale of cigarettes.
A.C.A. § 4-75-708(b).
Because you have asked that I assume that the wholesaler or retailer does have an intent to injure competitors or to destroy or substantially lessen competition, and because coupons constitute "concessions" in connection with the sale of cigarettes, I must conclude that the scenario you have described in Question 1 (given the outlined assumptions) would violate the Act, without regard to the amount of the sale price or the cost to the retailer.
Question 2 — Is it a violation of the Unfair Cigarette Sales Act for aretailer to sell tobacco products to a consumer, where the consumerpays, out of his own pocket, less than the minimum price, due to the useof a buydown or "paperless coupon"?
It is my opinion that, given the assumptions listed above, it is a violation of the Unfair Cigarette Sales Act for a retailer to sell tobacco products to a consumer, where the consumer pays, out of his own pocket, less than the minimum price, due to the use of a "buydown" or "paperless coupon." My reasons for reaching this conclusion are the same as those stated in response to Question 1. It makes no difference, in my opinion, whether the price paid in the sale in question is achieved by way of a paper coupon or a paperless coupon. The Act makes no distinction between types of "concessions" in sales prices. Therefore, the same principles will apply to make this transaction a violation of the Act. The amount of the "buydown" or "paperless coupon" is not paid in consideration for the exchange of cigarettes; it is consideration given in a separate transaction between the manufacturer and the retailer. This amount therefore cannot be calculated as a part of the sale price for cigarettes. This conclusion with regard to buydowns is bolstered by the fact that the Department of Finance and Administration has taken the position that amounts paid for "buydowns" or "paperless coupons" of this nature are not subject to sales tax.[3]
Again, I note that I would reach the conclusion that a sale using paperless coupons is unlawful per se in a situation where an intent to injure competitors or to destroy or substantially lessen competition is present, without regard to the sale price or the cost to the wholesaler or retailer. Given your assumption that such an intent is present in the scenario you have described in Question 2, I must conclude that this scenario would violate the Act.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SBA/cyh
[1] Several factual variables arise out of the foregoing statutory sections. Among those variables are: (1) Whether, as a factual matter, the price in a given transaction is less than the cost to the retailer or wholesaler; (2) Whether, as a factual matter, the retailer or wholesaler possesses an intent to injure competitors or destroy or substantially lessen competition; and (3) Whether, as a factual matter, any of the exemptions set forth in A.C.A. § 4-75-703 apply. In order to establish a violation of the Act, each of these variables must be addressed. As noted previously, you have addressed each of these variables in your provided assumptions. That is, I am assuming that the price paid by the consumer in the situation you have described has been factually established to be less than the "cost to the retailer," as that term is defined in the Act. I am also assuming that the retailer in the situation you have described has been factually established to possess an "intent to injure competitors or destroy or substantially lessen competition." Finally, I am assuming that in the specific factual situation that you have described, none of the exemptions set forth in A.C.A. § 4-75-703 apply.
[2] Although the amount of the coupon is included with the amount paid by the consumer for purposes of calculating sales tax, this fact does not change my conclusion that the coupon amount is not, itself, part of the consideration given in exchange for the cigarettes under the Act's definition of "sale."
[3] See Department of Finance and Administration Memorandum from John Theis to Tim Leathers, dated February 18, 1998, Re: "Sales Tax on Cigarettes — Inclusion of Buydown."